# Hardinge, Appellant, *v.* Kuntz et al.

*Principal and agent—Fraud of agent—Acceptance of benefits of fraud.*

1. While it is true that one accepting the benefits of fraud, is liable not only where he knew of and consented to the fraud at the time it was perpetrated, but also where he was personally innocent and had neither authorized nor known of the fraud at the time of its commission, yet one cannot be held so liable, where he was ignorant of the fraud at the time he accepted its benefits and merely retained what appeared to be legitimate proceeds of the transaction involved.

2. If an agent obtains possession of the property of another by making a stipulation or condition which he was not authorized to make, the principal must either return the property, or, if he receives it, it must be subject to the condition upon which it was parted with by the former owner.

3. A principal cannot repudiate an act of his agent, so far as it is injurious to himself, and adopt it so far as it is beneficial. He must either allow it to stand or set it aside in toto.

4. Where, in an equity suit, it appears that defendants agreed with plaintiff's agent to buy stock of a corporation at a certain price and resell it to plaintiff at a profit, and the agent in fraud of his principal but without the knowledge of defendant arranges the transaction so as secretly to keep the profit for himself by charging plaintiff more than the cost of the stock, the plaintiff is entitled to recover the profit made by his agent, but he must pay the purchase price agreed upon to defendant, inasmuch as he did not offer to rescind the contract and return the stock.

*Equity—Findings of facts—Verdict of jury—Appeals.*

5. The findings of fact by a chancellor, which involve the credibility of witnesses and the weight to be given their testimony, will, on appeal, be given the effect of a verdict of a jury, and they will not be disturbed where there is testimony to support them.

*Appeals—Question raised in lower court, but not assigned as error.*

6. Where a question raised and decided in the lower court in an equity case is not assigned as error, it cannot be considered on appeal.

Argued May 16, 1923. Appeal, No. 87, Jan. T., 1923, by plaintiff, from decree of C. P. York Co., Aug. T., 1920, No. 4, on bill in equity, in case of Harry W. Hardinge v. William J. Kuntz, York Trust Company and Robert G. McGann. Before WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for injunction and for repayment of money. Before WANNER, P. J.
The opinion of the Supreme Court states the facts.
Bill dismissed. Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Henry C. Niles* and *Robert T. McCracken,* with them *George S. Schmidt,* for appellant.—The court held that because McGann had no knowledge of the fraudulent means used by Kuntz, he is in a better position than Kuntz to enforce one of the notes which was a result of Kuntz's fraud. This is not according to reason or authority: Wheeler & Wilson Co. v. Aughey, 144 Pa. 398; Williams v. Kerr, 152 Pa. 560; Finn Vipond C. Co. v. Wolf, 12 Pa. Superior Ct. 317; Bergner v. Bergner, 219 Pa. 113; Bachrach v. Fleming, 269 Pa. 350; Taylor's App., 45 Pa. 71; Frame v. Coal Co., 97 Pa. 309; Henry v. Black, 213 Pa. 620.

*George Wharton Pepper,* with him *Frederick B. Gerber* and *Wm. F. Bay Stewart,* for Robert G. McGann, appellee.—If an agent obtains possession of the property of another, by making a stipulation or condition which he was not authorized to make, the principal must either return the property, or, if he receives it, it must be subject to the condition on which it was parted with by the former owner: Wheeler & Wilson Co. v. Aughey, 144 Pa 398; Mundorf v. Wickersham, 63 Pa. 87; Williams v. Kerr, 152 Pa. 560; Freyer v. McCord, 165 Pa. 539; Keefe v. Sholl, 181 Pa. 90.

*Richard E. Cochran,* with him *George Hay Kain,* for York Trust Co., appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 23, 1923:

Plaintiff filed this bill in equity praying, among other relief, for a decree enjoining the defendants from collecting or negotiating three promissory notes executed by him, that they be delivered up to him for cancellation, and that a certain sum of money, claimed by him in their hands, be repaid to him. After hearing, the court entered a decree dismissing the bill as to Robert G. McGann and the York Trust Company, except that the latter was ordered and directed to deliver up to the plaintiff two of his promissory notes for $50,000 each. The defendant, William G. Kuntz, against whom a decree had been taken pro confesso, was directed to pay all costs of the proceeding. Plaintiff appeals from the dismissal of his bill as to McGann, and from so much of the decree affecting the York Trust Company as did not require it to deliver up the third promissory note of $50,000.

The facts in the case need not be elaborated in order to dispose of the controversy. The pertinent ones are that Kuntz, who was general manager and treasurer of two corporations, approached plaintiff with a proposition to buy certain shares of their capital stock, some of which were held by the York Trust Company as executor and others as agent. Plaintiff was assured by Kuntz that he would purchase them and turn them over without any profit to himself. Relying on this, plaintiff constituted Kuntz his agent to make the purchase and placed in his hands $5,000 to be used in securing an option. By the payment of $2,000 of this sum, Kuntz obtained an option on the stocks from the trust company for $142,975. Being possessed of this, he then forged another option containing the figures $298,162.50 as the sale price, and produced it to plaintiff, with the representation that the price mentioned in it was the lowest figure at which the stocks could be obtained and plaintiff, being satisfied

with the purchase at that price, assigned the forged option to him. Kuntz then got in touch with McGann, who resided in Chicago, informed him that he had the option to purchase at the lower figure and could resell for double that amount.

We will permit the language of the court below to tell of McGann's connection with the matter: "The defendant, Kuntz, being without the funds necessary to purchase the stocks covered by his option from the York Trust Company, informed McGann of the amount required to secure the stocks, and the price which Hardinge was to pay for them. But he did not disclose the fact that he had agreed, as agent for Hardinge, to procure the stocks without any profit to himself, or that he had imposed upon Hardinge with the spurious option from the York Trust Company on said stocks. Kuntz offered McGann the sum of $10,000 out of the profits of the deal if he would advance $150,000 with which to carry it through. This was refused by McGann, who was willing, however, to purchase the stocks himself, and take the risk of the plaintiff's refusal to take the stock, and that arrangement was carried out."

The court below found as facts that the president of the York Trust Company was told by Kuntz that McGann was to be the purchaser of the stocks under the trust company's option; that the stocks were assigned in writing by Kuntz to McGann before payment was made for the same; that McGann paid for them with his own money, and the certificates duly stamped and assigned in blank were then delivered by the president of the trust company to McGann, that it sold the stocks to McGann and that later the certificates in the same condition were delivered to the president of the trust company as McGann's agent, with verbal and written authority to sell the same to Kuntz or to whomsoever he might designate at a price specified.

The court below also found that, on January 7, 1920, two days before the sale to Hardinge, the York Trust

Company unquestionably parted with its dominion over the shares, and credited the amounts received from Mc-Gann in the books of the estate which it represented, and to the individual owners of the stock; that McGann knew Kuntz had a purchaser for the stocks at the higher figure, but did not know Kuntz was acting as the agent of the purchaser, or that he had abused his principal's confidence or had forged the option; and that McGann, having paid for the stock, ran the risk that the subsequent purchaser might not complete the transaction.

The court determined, so far as McGann was concerned, that as he had no knowledge of any fraud or of any agency relation between the expected purchaser and Kuntz, he had the right to sell the stocks for such figures as he could get for them, and the fact that he authorized the sale to be made to Kuntz in the first instance, in no way affected the validity of the transaction. In empowering the trust company to sell to Kuntz for the increased price, McGann directed it to accept from him in payment cash and three notes for $50,000 each. This authorization, to sell to Kuntz, was avowedly for the purpose of concealing from the purchaser that McGann was the owner, but the court held there was no fraud in this, so far as McGann was concerned, as he knew nothing of the bad faith of Kuntz.

On January 9, 1920, the York Trust Company, acting as agent for McGann, consummated the sale of the stocks to plaintiff, receiving from him the three notes of $50,000 each and the balance of the consideration in cash, making the transfer of the shares to Kuntz in the first instance and from him to plaintiff. It remitted the cash to Mc-Gann and held the notes which were drawn to its order in pursuance of the understanding with McGann, awaiting their payment at maturity. Under an arrangement which had been entered into betwen McGann and Kuntz, two of the notes belonged to Kuntz and one of them to McGann.

Some months after the transaction was completed and before the maturity of the notes, appellant discovered the fraud perpetrated on him by Kuntz. This was before McGann had any knowledge of it. When inquiry was made of the latter regarding his connection with the transaction, he voluntarily made a statement to a representative of appellant of the entire details of it, so far as he was concerned, whereupon this emissary offered to pay immediately the note received by McGann, but the latter expressed a preference for payment at maturity. Kuntz confessed his fraud, executed an assignment to appellant of his interest in the two notes and turned over to him in restitution $32,000.

Appellant in his printed brief says there is no dispute about the essential facts, that they are established by the chancellor's rulings, and that the case turns on questions of law. He contends that even if McGann had no knowledge of the fraud this would not avail him against the demand for the return of the note, and that the controlling legal principal is that stated in 27 Corpus Juris, page 12, "Under the general rule, it has been held that one knowingly accepting the benefits of fraud is liable not only where he knew of and consented to the fraud at the time it was perpetrated, but also where he was personally innocent and had neither authorized nor known of the fraud at the time of its commission." The principle stated, however, is subject to this modification expressed in connection with it, "One cannot be held liable on this theory where he was ignorant of the fraud at the time he accepted its benefits and merely retained what appeared to be the legitimate proceeds of the transaction involved."

The theory of plaintiff is that in this transaction Kuntz was an agent of McGann, growing out of the fact that they were joint adventurers and secret partners, each responsible for everything done by the other in carrying out the plan by which the profit was to be realized, whether he knew of the fraud or not. The difficulty

about this is that the court below, upon evidence which supported the findings, found against this theory, and that McGann individually was the purchaser of the stocks in good faith and had sold them to plaintiff without knowledge or notice of the fraud; hence all claim of agency by Kuntz for McGann drops out of the case and Kuntz stands as the agent of plaintiff. If McGann had known anything about the fraud, or if he had known that Kuntz was the agent of Hardinge, an entirely different situation would exist. Plaintiff has only himself to blame that McGann was ignorant of his, plaintiff's, relation to the transaction. If he had notified the York Trust Company that he held an assignment of the option to Kuntz, the latter could not have perpetrated the fraud; hence, plaintiff cannot legally compel McGann to bear the loss caused by his, plaintiff's, misplaced confidence in his secret agent.

The authorities relied upon by appellant are cases of agency where a principal is called upon to refund the proceeds of his agent's fraud which he has received; as there was no agency relation between McGann and Kuntz, these decisions differentiate themselves clearly from the case at bar. In Wheeler & Wilson v. Aughey, 144 Pa. 398, 407, it was said, speaking of the notes that were fraudulently obtained, "For the purpose of obtaining the notes, Landis most certainly acted as the representative of the plaintiffs, and they conclusively accepted the fruits of his act"; in Mundorff v. Wickersham, 63 Pa. 87, 88, *"If an agent* obtains possession of the property of another, by making a stipulation or condition which he was not authorized to make, the principal must either return the property, or, if he receives it, it must be subject to the condition upon which it was parted with by the former owner"; and in Williams v. Kerr, 152 Pa. 560, 565, "The appellants, seeking to hold on to the advantage which they supposed they had gained after they had been informed......of the fraud practiced

by *their agent,* make the conduct of that agent their own."

There is another circumstance in the case which to our minds stands athwart plaintiff's path to recovery. He is not asking to rescind the contract, but holds on to the property he acquired and is calling upon McGann to surrender the note representing part of the purchase price. In good conscience and equity, he could not ask the latter to surrender the note without offering to him the shares bought from him at the price paid. In other words, his proposition to McGann should have been that he would turn over the stocks to him if he would return the notes and the cash paid. With McGann innocent of any fraud, appellant could not be permitted to keep the shares of stock and to refuse to pay the part of the consideration for them represented by the note. If appellant on discovery of the fraud had rescinded the contract and offered to return the shares and made demand for the notes given by him and the cash paid, we would have an entirely different problem to deal with, but this he did not do. By the cancellation of the two notes amounting to $100,000 which were given to Kuntz as his shares of the profits and the receipt from Kuntz of $32,000 which he turned over to plaintiff in an endeavor to make amends for his fraudulent conduct, appellant now has the stocks at a cost to him of $166,-162.50, and if he could get rid of the McGann note in this proceeding, he would be able to retain the stocks at a cost to him of but $116,162.50, or $26,812.50 less than the price the York Trust Company actually received for the shares.

In Doggett v. Feitig, 249 Pa. 461, where the plaintiff claimed he had been defrauded by defendant in certain real estate transactions, it was said: "The bill of the appellant is for the restoration of that part of the purchase money for the properties which passed into the hands of Feitig, *but he makes no offer of restoration. He affirms his contract* for the purchase of the properties

by holding on to such of them as he has not yet sold. His charge against Feitig is fraud, and, if he was injured thereby, *he cannot repudiate the transaction, so far as it is injurious to himself, and adopt it so far as it is beneficial. He must either allow it to stand or set it aside in toto:* Bispham's Principles of Equity 355. He makes no offer to return, because he cannot. By reason of his own sale of some of the properties, he cannot reinvest title to them in Feitig. On those which he sold he may have realized a  profit, and those which he still retains may be worth more than he paid for them. In affirming his purchases from Fry his only claim against Feitig is for any actual loss he may have sustained. He proved no loss, and was no more entitled to a relief in equity than he would have a right to recover in an action at law." The principle invoked in that case is controlling on the one before us in view of the fact that plaintiff elects to hold on to the stocks.

Appellant raises the question that the transfer tax provided by the Act of June 4, 1915, P. L. 828, was not paid on one of the transfers, that there were but two transfer taxes paid, one on the transfer from McGann to Kuntz and another on the transfer from Kuntz to appellant and that none was paid on the transfer from the trust company to McGann and that this prevents proof of that transfer. Upon just which transfers a tax was paid is not altogether clear. The decision of the court in respect to the tax is not, however, assigned as error, and therefore, cannot be reviewed.

This is peculiarly a case whose determination, so far as we are concerned, must largely rest on the findings of the controlling facts by the court below. Whether we would reach the same conclusion that it did from a reading of the cold type of the record it is not necessary for us to declare. The controversy, in its final analysis, is one in which the most important factor is the credibility of the witnesses. The court below had them before it, and consequently, the great advantage of determining

from their manner of testifying, from their appearance, and their reactions to the atmosphere of the case, whether they were credible.   It concluded that the voluntary disclosure made by McGann, after he was informed of the fraud perpetrated by Kuntz "is inconsistent with plaintiff's theory of his guilty knowledge of, and participation in, the fraudulent acts of Kuntz.   It is rather confirmatory of an attitude of frankness toward all, which was characteristic of his testimony throughout, which, in the opinion of the court, added to its credibility."   This finding is necessarily controlling upon us; and upon it, and the other findings of the court below which have been referred to, we base our conclusion that the action of the court below in dismissing the bill as to the defendant, McGann, was proper.   "The credibility of witnesses, and in a large degree the conclusions to be drawn from their testimony, which depends upon their character, intelligence and knowledge of the subject, can be determined much better by the judge who hears them than by us on appeal": Steinmeyer v. Siebert, 190 Pa. 471, 475.   "The findings of fact by a judge, which involve the credibility of witnesses and the weight to be given their testimony, will be given the effect of a verdict of a jury, and they will not be disturbed where there is testimony to support them": Eppsteiner v. Isman, 239 Pa. 393, 394; Shimer v. Aldine Trust Co., 264 Pa. 444, 447.

So far as the York Trust Company is concerned, it appears to have been but a stakeholder and promptly offered to deliver the notes in question into court for the court's disposition of them; accordingly the action of the court in dismissing the bill as to it was correct.

The assignments of error are all overruled, the decree of the court below is affirmed and the appeal dismissed at the cost of appellant.