**STATE of Missouri, ex inf. Vicki THOMAS, Special Prosecuting Attorney for the County of Lafayette, Respondent,**

v.

**Patsy OLVERA, Recorder of Deeds for the County of Lafayette, Appellant.**

No. WD 55972.

Missouri Court of Appeals, Western District.

Jan. 12, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1999.

Application to Transfer Denied April 27, 1999.

Farrell D. Hockemeier, Richmond, MO, Attorney for Appellant.

Timothy M. Finnical, Liberty, MO, Vicki Thomas, Kansas City, MO, Attorneys for Respondent.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

HOWARD, Judge.

Pursuant to a quo warranto proceeding, Patsy Olvera was removed from office as recorder of deeds for Lafayette County. She now appeals, claiming that the trial court erred by entering the summary judgment which removed her from office because there remained a genuine issue of material fact as to whether she willfully neglected any of her official duties, as required for removal pursuant to § 106.220, RSMo 1994.

Affirmed.

This case arises from lengthy investigations of Olvera's office by the State Auditor's Office and the Missouri State Highway Patrol. As a result of these investigations, Olvera was indicted by a Lafayette County grand jury on twelve counts of alleged criminal violations. In addition, on April 14, 1997, a special prosecuting attorney filed a quo warranto petition to remove Olvera from office pursuant to § 106.220.

Section 106.220 authorizes the removal of certain county or municipal officials who have "been guilty of any willful, corrupt or fraudulent violations or neglect of any official duty." In this case, the trial court found that Olvera had failed to comply with her duties as a recorder of deeds in a second class county, as defined by §§ 59.230 and 59.240, RSMo 1994:

**59.230. Fees received—reports—deposited where (second class counties).**—The recorder of deeds in counties of the second class shall keep a full, true and faithful account of all fees of every kind received and shall make a report thereof every year to the county commission. All fees received by him each year of his official term shall be paid by him into the county trea-

sury, except that whenever there is in the county treasury to the credit of the jury fund six thousand dollars or more, the aforementioned fees received by the recorder of deeds shall be paid into the county treasury to the credit of the general revenue fund.

**59.240. Fees to be collected—affidavit required—report, contents of (second class and certain first class counties).—** The recorder of deeds of each county of the first class not having a charter form of government and of each county of the second class shall charge, receive and collect in all cases every fee, charge, or money due his office by law. He shall also, when he makes and files the report required by section 59.227 or by section 59.230 at the end of each year of his official term, verify the same by affidavit, and the report shall show the source and amount of every fee or charge collected. All fees, charges and moneys collected by the recorder of deeds shall be the property of the county.

The trial court referred to a number of separate transactions in finding that Olvera failed to comply with her duties as a recorder of deeds. First, the court found that on or about November 16, 1995, her office received a check from the Dunbrooke Company for $77.00. However, Olvera personally altered the corresponding entry in the official fee book, changing the $77.00 payment to read $7.00. As a consequence, when she swore under oath that the fees for November 1995 totaled $6,694.00, the true figure was at least $70.00 higher.

Second, the court found that on or about February 17, February 23, March 6, and March 10, 1995, her office received checks from Agmo Financing for $9.00, $16.50, $32.50, and $54.00, respectively. These checks were never entered in the official fee book. As a consequence, when Olvera swore under oath that the fees for February 1995 totaled $5,608.00, the true figure was at least $25.50 higher, and when Olvera swore under oath that the fees received in March 1995 totaled $7,972.50, the true figure was at least $86.50 higher.

Third, the court found that on or about March 27, 1995, her office received a check from the Waverly Bank in the amount of $28.00. The corresponding entry in the official fee book was for only $14.00. As a consequence, when Olvera swore under oath that the fees received in March 1995 totaled $7,972.50, the true figure was an additional $14.00 higher.

Fourth, the court found that on or about January 27, 1995, her office received a check from the Third National Bank for $43.50. This check was never entered into the official fee book. As a consequence, when Olvera swore under oath the fees received in January 1995 totaled $5,916.00, the true figure was at least $43.50 higher.

Fifth, the court found that, as the cumulative result of all these discrepancies, when Olvera swore under oath that the fees received by her office in 1995 totaled $81,620.00, the true figure was at least $239.50 higher. The court ordered Olvera removed from office because there was uncontradicted evidence that, contrary to her monthly and yearly affidavits, she failed to account for all the money received.

In her first point on appeal, Olvera claims that no affidavits were attached to the relator's motion for summary judgment or otherwise filed with the court. Therefore, she contends, the trial court erred in granting the summary judgment.

Her claim is without merit, however, as the record on appeal shows that affidavits and other exhibits were before the court. In its findings of fact and conclusions of law, the trial court states that it reached its decision "after careful consideration of the filed affidavits and contravening affidavits, and after reviewing the depositions which the Court has by Respondent's Request agreed to consider to supplement and oppose the affidavits filed by the parties herein." Point denied.

In her second point on appeal, Olvera claims that the trial court abused its discretion by denying her request, pursuant to Rule 74.04(f), to either deny the relator's motion for summary judgment or continue the hearing on the motion for summary judgment because of the relator's failure to provide timely discovery. To place this claim in a chronological context, we note that the

relator's quo warranto petition to remove Olvera from office was filed on April 14, 1997, and relator's motion for summary judgment was filed on June 27, 1997. A hearing on the motion was set for August 8, 1997, but after being continued once, the hearing was actually held on August 15, 1997.

■ The decision to grant or deny relief pursuant to Rule 74.04(f) is within the discretion of the trial court. *State ex rel. Conway v. Villa,* 847 S.W.2d 881, 885 (Mo.App. E.D. 1993). Olvera is not entitled to relief because she has not indicated that discovery would show the existence of any genuine issue of material fact. *Kemp Const. v. Landmark Bancshares,* 784 S.W.2d 306, 309 (Mo. App. E.D.1990). It is not sufficient to claim that further discovery might provide the necessary evidence. *Id.* Under the circumstances of this case, we find no abuse of discretion in the trial court's refusal to grant relief pursuant to Rule 74.04(f). Point denied.

In her third point on appeal, Olvera claims that the trial court erred by entering the summary judgment which removed her from office because she presented evidence that she did not know that any of the entries in the official fee book were incorrect. Therefore, she argues, there remained a genuine issue of material fact as to whether she "willfully neglected" any of her official duties, as required for removal pursuant to § 106.220.

■ The mere violation of an official duty will not support a judgment of ouster; instead, § 106.220 requires that the misconduct be the "willful or fraudulent violation" or "willful neglect" of the official duty at issue. *State ex inf. Fuchs v. Foote,* 903 S.W.2d 535, 538 (Mo. banc 1995). The Missouri Supreme Court, in *Foote,* explains what "willful neglect" means in this context:

> "Willful neglect" ... is a hybrid between conduct that is wholly willful and conduct that is wholly neglectful. It is something more than mere mistake or the thoughtless failure to act. Neglect pertains to nonfeasance, the failure to act, whereas willfulness refers to intentional or self-determined conduct. Implicit in the idea of willfulness is the actor's knowledge of the

duty neglected; one cannot intentionally neglect a duty without knowing that the duty exists. We conclude, therefore, that a public official "willfully neglects" an official duty when he or she intentionally fails to act, contrary to a known duty.

903 S.W.2d at 538–539.

■ Olvera contends that there is a genuine issue of material fact as to whether she willfully neglected her duties in this case, as she presented evidence that she did not know that any of the entries in the official fee book were incorrect. Olvera acknowledges that she altered the entry for the Dunbrooke Company check, changing the figure from $77.00 to $7.00. However, in her affidavit and deposition testimony in the record on appeal, she asserts that, by making this change, she thought she was correcting, not falsifying, the entry.

Olvera maintained that, at the end of November 1995, she was engaged in the routine process of reconciling the total of money received that month with the entries in the official fee book, and she noticed that the money was $70.00 short. She also noticed that the $77.00 entry on November 16 for the Dunbrooke Company was unusually large, so she assumed that one of her employees mistakenly added an additional "7," and that the correct amount of the entry should have been $7.00. Therefore, according to Olvera, when she changed the entry she thought she was actually removing a mistake to create an accurate record of the money received.

Of course, the result of this alteration was the creation of a record which was not a true and faithful account of the fees received, and her monthly and yearly reports of the fees received were untrue. Olvera acknowledged that, instead of taking steps to verify or allay her suspicions of error in the original entry, she simply assumed the $77.00 figure was wrong and altered the entry.

■ It does not matter that, according to Olvera, she did not know that the altered Dunbrooke entry or any of the other entries in the official fee book were incorrect. Pursuant to *Foote,* a public official "willfully neglects" an official duty when she intentionally fails to act, contrary to a known duty.

903 S.W.2d at 538–539. Here, Olvera intentionally failed to act by not making the effort to find out if the unusual $77.00 entry was in fact accurate, and instead merely assumed a mistake had been made and summarily changed the entry, contrary to the known duty to keep and report an accurate record. Consequently, we cannot say that the trial court erred in finding that her removal from office was justified pursuant to § 106.220. Point denied.

The judgment of the trial court is affirmed.

All concur.