**Kenneth BINKLEY, et al., Appellants,**

v.

**Arnold PALMER, et al., Respondents.**

**No. ED 75643.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 2, 1999.

John F. Arnold, Carolyn Marie Kopsky, James Carter Hetlage, Kevin Lee Fritz, John L. Allen, Carlsbad, CA, for appellants.

Gary L. Mayes, James W. Erwin, St. Louis, for respondent.

SHERRI B. SULLIVAN, Judge.

This appeal arises out of the failure of a project to establish a resort and accompanying golf course in the Lake of the Ozarks. Appellants, investors in the project, appeal summary judgment entered in favor of Respondents on all claims in their petition. We affirm.

Between 1989 and 1992, Appellants invested in North Port Golf Associates I, L.L.P. (hereinafter NPGA). NPGA is a limited partnership whose sole asset was a real estate and golf course development project located at the Lake of the Ozarks, known as "North Port at the Lake." North Port Equities, Inc., the managing general partner of NPGA, and North Port Associates, Inc., an affiliate thereof, were Missouri corporations created to develop a residential and vacation community at North Port at the Lake. Robert W. Carron, Joseph O. Medsker, Richard M. Groff

and Sam M. Johnson, III were the officers and directors of North Port Equities and North Port Associates and the general partners of NPGA. H. Beck, Inc. was a broker-dealer marketing limited partnership interests in NPGA (collectively referred to as Promoters and/or Sellers of NPGA). In 1989, Robert Carron requested Respondents Arnold Palmer ("Palmer"), Palmer Course Design Company ("PCDC") and Arnold Palmer Golf Management Company ("APGMC") to design and manage two championship golf courses at North Point at the Lake.

On March 11, 1989, Respondents PCDC and APGMC entered into agreements with North Port Associates, whereby PCDC agreed to design two golf courses and assist with their construction and APGMC agreed to manage and operate the golf courses upon the completion of their construction. Both Agreements prohibited North Point Associates from using Respondents' names in any manner that implied their endorsement of or association with any other business of North Point Associates. The PCDC Agreement expressly disavowed any partnership or joint venture between North Port Associates and Respondents Palmer or PCDC.

In 1991, Arnold Palmer Enterprises and North Port Associates entered into an agreement (Palmer Agreement), whereby North Port Associates was granted use of Palmer's name and visage to promote the grand opening of the sale of real estate at North Port at the Lake. The Palmer Agreement disavowed any partnership or joint venture between Arnold Palmer Enterprises and North Port.

On several occasions prior to the sale of limited partnership interests in NPGA, counsel for Respondents, William Carpenter, corresponded with the general partners of NPGA, advising that Respondents' contracts with North Port Associates did not permit the Promoters and Sellers to solicit the interest of investors or financial institutions in any manner that suggested Respondents were involved in the marketing of NPGA or that Respondents approved of NPGA in any way. Respondents further demanded the inclusion of disclaimers in the official investment summary brochure for NPGA (Investment Summary) and the Confidential Private Placement Memorandum concerning NPGA (PPM). Both documents provided:

As described herein, golf course design and management services will be provided to the partnership by Palmer Course Design Company and Arnold Palmer Golf Management Company, respectively. Neither of these companies, nor Arnold Palmer, is affiliated with the partnership or general partners. Their identification is not, and should not be considered to be, an endorsement of the securities offered herein.

The PPM also stated that Respondents were not involved in any aspect of the project beyond the design and management of the golf course and that Respondents' participation in the golf course phase of the project should not be construed as an endorsement of the merits of the securities being offered.

Between 1989 and 1992, Appellants purchased limited partnership interests in NPGA through either the general partners of NPGA or through other Promoters and Sellers of limited partnership interests in NPGA. Certain of the Promoters and Sellers allegedly made optimistic predictions about the success of NPGA. The Palmer Respondents did not sell limited partnership interests in NPGA to any Appellant or other person or entity.

Appellants executed either a Subscription Agreement or Assignee Representation Letter, both of which represented and warranted that each Appellant had received, read and was familiar with the PPM for NPGA. Many Appellants received an Investment Summary or had access thereto prior to investing in NPGA.

PCDC completed the design of an 18–hole championship golf course at North-Port. The golf course opened to the public

in August of 1992. APGMC managed the golf course upon its opening. APGMC terminated its contract with North Port Associates as of September 30, 1992, due to North Port Associates' failure to pay. The project was not a financial success. NPGA, North Port Equities, and the individual general partners in NPGA were adjudicated bankrupt.

Appellants maintain that the trial court erred in granting Respondents' Motion for Summary Judgment because there exist genuine issues of material fact as to whether Respondents were partners or joint venturers, by estoppel or otherwise, in the sale of limited partnership interests in the investment company to Appellants. Appellants base this contention on two theories: (1) Respondents' conduct, acquiescence and omissions led Appellants to reasonably believe to their detriment that Respondents were partners or joint venturers with the investment company by their conduct in soliciting, promoting and endorsing the entire resort enterprise and creating the impression that they controlled, managed and were generally responsible for the entire development, and (2) Respondents intended to enter into a relationship, which in law constituted a partnership or joint venture with the investment company, as evidenced by Respondents' express and implied conduct, including certain written contracts. Appellants also claim that the trial court erred and abused its discretion in denying Appellants' request to depose Palmer before considering Respondents' Motion for Summary Judgment and allowing Respondents to rely on their affidavit of Palmer in support of their Motion for Summary Judgment.

Summary judgment is designed to permit the court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. When considering appeals from summary judgment, the appellate court will review the record in the light most favorable to the party against whom judgment was entered. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.* This makes appellate review essentially de novo. *Id.*

■ A partnership is an association of two or more persons to carry on as co-owners of a single business enterprise for profit. Section 358.060.1,[1] *Hallmark v. Haenni*, 947 S.W.2d 452, 455 (Mo.App. E.D.1997). The primary criterion for determining the existence of a partnership is the intent of the parties to enter into such a relationship. *Fischer v. Brancato*, 937 S.W.2d 379, 382 (Mo.App. E.D.1996). A joint venture is a kind of partnership. *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 217 (Mo.App. E.D. 1987). A joint venture exists where there is (1) an express or implied agreement among members; (2) a common purpose to be carried out by the members of the group; (3) a community of pecuniary interest in the common purpose, and (4) an equal voice, giving an equal right of control in the direction of the enterprise. *Inauen Packaging Equipment Corp. v. Integrated Indus. Services, Inc.*, 970 S.W.2d 360, 371 (Mo.App. W.D.1998). There is generally no essential difference between a partnership and a joint venture, *Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo.1974), and they are governed by the same legal rules. *Sarasohn & Co., Inc. v. Prestige Hotels Corp.*, 945 S.W.2d 13, 16 (Mo.App. E.D. 1997).

1. All statutory references are to RSMo (1994) unless otherwise indicated.

Section 358.160 governs partnership by estoppel in pertinent part as follows:

1. When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to anyone, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

Appellants maintain that the trial court erred in finding that there was no partnership or joint venture relationship between Respondents and the Promoters and Sellers of North Port, and that Appellants could not have reasonably believed in the existence of such a relationship. The trial court determined that Respondents' only role with regard to the North Port project was involvement in the design and management of the golf course. Appellants contend the evidence shows active and extensive involvement on the part of Respondents in the offer, sale, endorsement and promotion of NPGA to potential investors, including Appellants.

■ In support of their argument, Appellants refer to letters in which Palmer's umbrella logo is used in juxtaposition with the North Port at the Lake logo, a videotaped sales presentation and sales brochures which boast of Respondents' involvement with the project. Appellants suggest this evidence shows that the promoters of the North Port project were attempting to persuade investors that the project was going to be a success because Palmer and his affiliates were in control of the project.

This evidence, viewed in the light most favorable to Appellants, fails to create an issue of fact on the existence of a partnership or joint venture. It merely demonstrates that the promoters of the North Port project used Palmer's image and involvement with the project to promote the project, and in so doing represented to Appellants that the project would be a success due in part to Palmer's image and popularity. The videotape was a brief endorsement, by Palmer, of the quality of North Port's golf course. To prove the existence of a partnership, Appellants must present evidence of an association of two or more persons to carry on as co-owners of a single business enterprise for profit. *Hallmark*, 947 S.W.2d at 455. Appellants have not presented such evidence, and therefore have not raised a question of fact on this issue to defeat summary judgment. Further, Respondents' involvement was limited to designing, managing and promoting the golf course and its accompanying facilities, as opposed to the entire resort. The evidence shows that Respondents merely provided services, for which they were reimbursed. Such involvement does not as a matter of law constitute co-ownership of the North Port business enterprise, nor does it support the existence of a joint venture between Respondents and Promoters. It is inappropriate for a court to imply a joint venture where it is evident that there is a different business form involved. *Rosenfeld v. Brooks*, 895 S.W.2d 132 (Mo.App. E.D.1995). Here, the evidence demonstrates the existence of a contract for services, namely design, management and promotion, of the golf course and its related facilities. When the limited partnership failed to pay Respondents for their services, Respondents ceased performing their services.

■ In its order granting summary judgment in Respondents' favor, the trial court stated that Respondents' agreements

with North Port are clear indications that there was no intent on the part of Respondents to form a partnership, joint venture or any other such affiliation either in fact or by implication with the Promoters and Sellers of limited partnership interests in NPGA. Examination of these documents de novo reveals clear disclaimers of any such relationship between the parties. These documents include the PPM, which all Appellants as investors were deemed to have read by their signature upon either a subscription agreement or an assignee representation letter; the APGMC Contract, which constituted the agreement between APGMC and NPGA for management and operation of the golf course; the PCDC Contract which constituted the agreement between PCDC and NPGA to design the golf course; the Palmer Agreement, which secured Palmer's involvement, through Arnold Palmer Enterprises, Inc.; the Subscription Agreements and Assignee Representation Letters, which secured Appellants' investment in the enterprise as well as indicating their understanding of disclaimers contained in the PPM; letters sent by Respondents' Counsel Mr. Carpenter to Mr. Carron; a letter sent by independent counsel Mr. Cooper to Mr. Carpenter providing legal interpretation of the Palmer Agreement, and the Investment Summary, which set out the risks of investment.

Appellants contend that, even if the disclaimers contained in these documents exist and are enforceable, Appellants either did not receive these documents from their brokers, did not read these documents if they did receive them, or did not understand the disclaimers if they did read them. "Consequently," Appellants state in their brief, "it is wrong to rely on any of the disclaimers found within those documents to support the reasonableness of Appellants' reliance."

■ Such a contention is incorrect, because a party is deemed to have knowledge of the contents of any contract he signs. It has long been settled in Missouri that absent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he or she signs. *Gibson v. Adams,* 946 S.W.2d 796, 803 (Mo.App. E.D.1997). Appellants have presented no evidence of fraud. As such, the Court must recognize that they were capable of reading and understanding the abovementioned agreements. They are charged with knowledge of the contents of those agreements. Appellants cite *Walters v. Maloney,* 758 S.W.2d 489, 497–498 (Mo. App. S.D.1988), for their contention that they come within the exception to the rule, in that they had a relationship of trust and confidence with their brokers, and therefore are not conclusively bound by the contents of the agreements. *Walters,* however, involved a claim of fraud against the appellants' broker. The appellants in that case had a client-real estate broker relationship with the respondents. Such is not the case here where Appellants' brokers were third parties.

■ With regard to the issue of Appellants' belief as to the nature of the relationship between Respondents and the Sellers and Promoters of North Port, the evidence in the summary judgment record to support a reasonable belief that a partnership or joint venture relationship existed between them is insufficient as a matter of law. A question of fact exists only when fair-minded people, exercising reasonable judgment, could reach different conclusions on the issue in controversy. *Chancellor Development Co. v. Brand,* 896 S.W.2d 672, 677 (Mo.App. E.D.1995). When reasonable minds could not differ, summary judgment is properly granted. *Id.* With regard to Appellants' first point on appeal, this Court finds as a matter of law, based upon the undisputed facts in the record, that Respondents did not solicit, promote or endorse the entire resort enterprise. There is no evidence in the record from which it could reasonably be inferred that Respondents created the impression that they controlled, managed or

were generally responsible for the entire resort development. Accordingly, we conclude that reasonable minds could not differ on the nonexistence of a partnership or joint venture relationship between Respondents and the Sellers and Promoters of North Port, and summary judgment was properly granted. *Id.* Appellants' first point is denied.

In their second point on appeal, Appellants contend that there exists a genuine issue of material fact as to whether Respondents intended by their actions or conduct to enter a relationship which in law constitutes a partnership or joint venture, and that the existence of disclaimers is not conclusive on the issue. Appellants cite *Arnold v. Erkmann*, 934 S.W.2d 621, 630 (Mo.App. E.D.1996), for its holding that a disclaimer of intent to create a partnership in a written agreement is not dispositive of the existence of a partnership, if intent to enter into a partnership can be found in other provisions of the agreement. Appellants refer to clauses in the APGMC and PCDC contracts indicating that Respondents had some degree of control over the golf course and its accompanying facilities, and that Respondents received compensation for their services. Other clauses pointed out by Appellants demonstrate that PCDC was required to prepare financial feasibility studies for North Port, and that Palmer was required to make personal appearances at North Port. None of the evidence Appellants present in support of their Motion for Summary Judgment demonstrates intention on the part of Respondents to enter into a partnership or joint venture relationship with the Promoters and Sellers of North Port.

■ Appellants next maintain that the Palmer Respondents were to receive, in addition to compensation for their services, six percent of club-related gross revenues, and that Palmer was to receive three percent of gross income generated from North Port real estate sales. Such sharing of profits, contend Appellants, is beyond compensation for services and is pri-

ma facie evidence of partnership. Section 358.070.4. We disagree. Missouri courts have defined "profit" as the benefit of or the advantage remaining after all costs, charges and expenses have been deducted from income. *Skinner v. Thomas*, 982 S.W.2d 698, 700 (Mo.App. E.D.1998). Gross revenues are not profits and an agreement to pay a percentage of gross revenues is not the sharing of profits. Appellants' second point is denied.

Appellants' third point contends the trial court abused its discretion (1) in denying their request to take the deposition of Palmer and requiring Appellants to respond to Respondents' Motion for Summary Judgment without the benefit of Palmer's deposition and (2) in allowing Respondents to support their Motion for Summary Judgment with Palmer's affidavit.

On August 6, 1998, Respondents filed their Motion for Summary Judgment, which they supported with the Affidavit of Palmer. On August 17, Appellants filed a Motion under Rule 74.04(c)(2) for Additional Time to Respond to Respondents' Motion for Summary Judgment on the Grounds that Additional Discovery was Needed and a Motion to Quash Notice of Hearing. On the same day Appellants also noticed Palmer's deposition for September 3 and 4 in St. Louis. On September 1, the trial court quashed the notice of Palmer's deposition and granted Appellants' Motion for Additional Time to Respond. The court gave them until September 23, 1998, to file their opposition to Respondents' Motion for Summary Judgment. Appellants filed their opposition to Respondents' Motion on September 23, 1998, without having taken Palmer's deposition, but did not renew their Motion for Additional Time. On November 5, the trial court ordered that Palmer's deposition should not be taken until the court ruled on the summary judgment motion.

Respondents maintain that, having responded to the motion without seeking further time to depose Palmer, Appellants waived any claim that the trial court

should not have ruled until they had an opportunity to complete that deposition. Respondents add that Appellants did not state in their affidavit in support of their motion specifically what additional relevant and material information supporting the existence of a factual dispute they expected to obtain by deposing Palmer, as required by Rule 74.04(c)(2). Appellants contend the Rule does not require such factual specificity.

Rule 74.04(c)(2) provides that opponents of a summary judgment motion must call the trial court's attention to uncompleted discovery and file an affidavit describing the additional discovery needed in order to respond to the motion. Cases addressing the sufficiency of affidavits under Rule 74.04(f) are applicable to Rule 74.04(c)(2). See, *Rice v. Hodapp*, 919 S.W.2d 240, 246 (Mo.1996). Absent a showing that additional discovery would have shown the existence of any genuine issue of material fact, a trial court does not err or abuse its discretion in refusing a request for a continuance to permit discovery prior to ruling on a summary judgment motion. *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App. E.D. 1993); *Curnutt v. Scott Melvin Transp., Inc.*, 903 S.W.2d 184, 193 (Mo.App. W.D. 1995); *State ex rel. Thomas v. Olvera*, 987 S.W.2d 373 (Mo.App. W.D.1999). In *Villa*, 847 S.W.2d at 885, and *Olvera*, 987 S.W.2d at 376, the courts found that an affidavit supporting a motion to continue must specify what additional evidence supporting the existence of a factual dispute the movant would have presented to the court if the court had continued the hearing. It is not sufficient to claim that further discovery might provide the necessary evidence. *Olvera*, 987 S.W.2d at 376; *Kemp Const. v. Landmark Bancshares*, 784 S.W.2d 306, 309 (Mo.App. E.D.1990). Rather, the affidavit must describe the evidence. *Hodapp*, 919 S.W.2d at 246. In this case, the affidavit merely set out that it could not respond without the benefit of Palmer's deposition. It did not set out what evidence supporting the existence of a factual dispute would be adduced by such deposition. The trial court did not therefore abuse its discretion in denying additional time to respond.

We further find no prejudice. Appellants took the depositions of numerous other individuals who were actually in charge of the dealings between Respondents and the Promoters and Sellers of North Port, including Palmer's agent, his agent's attorney, the Chief Operating Officer and the President of his companies. There is no indication that Palmer would in a deposition contradict the testimony of these individuals, who were primarily in charge of the business dealings at issue.

Accordingly, the trial court did not abuse its discretion in denying Appellants' request for Palmer's deposition and requiring them to respond to the summary judgment motion. Appellants' third point is denied.

In Points IV and V Appellants do not claim that the trial court erred, but that it acted properly in not basing its grant of summary judgment on two other grounds. We do not address these because they do not assert error on the part of the trial court.

The judgment of the trial court is affirmed.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, Jr. J., concur.