**Cid A. PRICE, Plaintiff–Appellant,**

v.

**Matthew VATTES, Defendant–Respondent.**

No. 26433.

Missouri Court of Appeals,
Southern District,
Division One.

April 25, 2005.

John C. Banning, Springfield, for appellant.

Joseph A. Bohrer, Springfield, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

Cid A. Price ("Price") brought suit against Matthew Vattes ("Vattes") for the breach of an alleged oral partnership agreement. Price contended that the parties entered in the joint venture to create, operate, and ultimately sell a poultry plant, with the intent to build the operation to a point where it could be sold to a third party; he further contended that he was to receive 49% "of the profit." Apparently, the "profit" refers to the money made if and when the business sold to a third party; Price contended the "real estate/poultry plant" was sold and his share of the profit amounted to $1,336,965.00. Vattes denied the existence of a partnership agreement and filed a motion for summary judgment, which was sustained by the trial court. This appeal by Price follows.

■ When reviewing an appeal from summary judgment, this Court will review the record in the light most favorable to the party against whom judgment was entered. We give the non-moving party the benefit of all reasonable inferences from the record. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The review of the grant of summary judgment is de novo. We do not need to defer to the trial court's order granting summary judgment. The criterion on appeal for testing the propriety of summary judgment is the same as the standard that the trial court should have employed to determine whether to sustain the motion. *Deer Run Property Owners Ass'n v. Bedell*, 52 S.W.3d 14, 16 (Mo.App. S.D.2001).

■ A genuine issue of material facts exists where the record contains competent evidence that demonstrates two plausible, but contradictory, accounts of the essential fact necessary to movant's recovery; the right to summary judgment is defeated if evidence in the record presents a genuine issue of material facts. *Birdsong v. Christians*, 6 S.W.3d 218, 222 (Mo. App. S.D.1999). It is whether these facts are disputed, not the truth of these facts, which matters. *Id.* at 224.

To be entitled to summary judgment under Rule 74.04,[1] the movant must establish (1) that there is no genuine dispute as to the material facts on which he relied for summary judgment; and (2) that he is entitled to judgment as a matter of law based on these undisputed facts. If the movant is the defending party, as is the case here, he can establish a prima facie case for summary judgment by one or more of the following means: (1) showing facts that negate any one of the non-movant's essential facts; (2) showing that the non-movant has not been able to produce, and will not be able to produce, evidence sufficient to allow the court to find the existence of any one of the non-movant's elements; or, (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support movant's properly pleaded affirmative defense. *Sloss v. Gerstner*, 98 S.W.3d 893, 896 (Mo. App. W.D.2003).

■ We find that Price has been unable to produce, and will not be able to produce, evidence establishing that a partnership agreement existed between him and Vattes. A partnership is an association of two or more persons to carry on as co-owners in a business for profit. Section 358.060.1[2]; *Hillme v. Chastain*, 75 S.W.3d

---

1. All rule references are to Supreme Court Rules (2004), unless otherwise stated.

2. All statutory references are to RSMo 2000 unless otherwise indicated.

315, 317 (Mo.App. S.D.2002). The rules for determining the existence of a partnership are set forth in section 358.070, which provides in pertinent part:

(1) Except as provided by section 358.160 persons who are not partners as to each other are not partners as to third persons;

(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property;

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived;

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(a) As a debt by installments or otherwise;

(b) As wages of an employee or rent to a landlord....

 The party asserting the existence of a partnership has the burden of proving a partnership. We never presume that a partnership exists and the burden is upon the party asserting its existence to establish all elements of a partnership by clear, cogent, and convincing evidence. *Morrison v. Labor and Indus. Relations Com'n,* 23 S.W.3d 902, 907–908 (Mo.App. W.D. 2000). A partnership is a contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions. *Hillme,* 75 S.W.3d

at 317. In his response to the summary judgment motion, Price did not provide evidence to show a prima facie case of a partnership between him and Vattes. To withstand a summary judgment motion against him, Price was required to provide some specificity as to the terms of the partnership, including the division of profits and losses. He did not do so.

Price claimed the partnership was formed in a telephone conversation sometime in July of 1987. The description of the phone call is as follows:

Q Tell us about this phone conversation.

A I had had calls prior to this particular date that I'm fixing to talk about. You know, one call I can remember, like February or March of '87, was, you know, "How does it feel to be vice-president of Mountain Valley Poultry?" I said, "Well, fine, I guess."

He told me that Fabio Heredia, which was a partner, I guess, during that time, was on his way out; and Matt had mentioned to me, you know, starting a company. I told him, I said, "Matt, I don't know anything about, you know, starting a company, what I need to do or anything." And he let me know that he would, you know, talk me through this, what I needed to do and, you know, instructions.

Again, the date was July the 21st of '87. He had told me that what I need to do, if I had a lawyer, contact him and—you know, to set this corporation up. And I again told him, you know, I'm not sure how to do this.

 Price further explained his definition of "partners" as being "two people involved in the same operation, company, whatever." He continually claimed that "the partnership, the corporation, to me

they're one and the same." When the question of partnership or no partnership arises, it must be answered from the facts presented; however, participation in the profits and losses of a business affords the usual, and perhaps the most convincing, test of the existence of an intention to form a partnership. *Van Hoose v. Smith*, 355 Mo. 799, 198 S.W.2d 23, 26–27 (1946). An agreement for such participation is not a conclusive test and does not absolutely constitute a partnership as a conclusion of law if other circumstances show that a partnership was not intended. *Id.* at 27. The intent of the parties is the primary factor for determining whether such a relationship exists. The level of intent necessary to find a partnership existed is not the intent to form a partnership, but the intent to enter into a relationship which constitutes a legal partnership. *Hillme*, 75 S.W.3d at 317.

Initially, Price was unclear as to who the partners were in the partnership. When asked who the partners were in the agreement, Price claimed himself, Vattes, "[a]nd probably Don Walker." Although Price claimed Vattes was a 51% partner while Price was a 49% partner, he provided no partnership percentage for Don Walker. Clearly, an agreement for a partnership was not specific enough when a partner could not even identify who is in the partnership agreement and each partner's percentage of ownership. *See* section 358.070.1 (mandating that persons who are not partners as to each other are not partners to third persons).

A further problem with the alleged partnership agreement is the "business" which was the subject of the partnership. It is undisputed that Price sued Vattes in his individual capacity yet Price claimed the only "partnership" asset was titled in a corporation called Mountain Valley Poultry, Inc., a corporation that was in existence prior to any claim of partnership. At the time that the partnership was supposedly formed, Vattes was not the sole shareholder of Mountain Valley Poultry, Inc.; he was only a 51% shareholder in the corporation. Price did not dispute that it was Mountain Valley Poultry, Inc., which sold the poultry processing plant in Crane, Missouri, and that the corporation owned the real estate upon which the plant was situated. The proceeds from the sale of the poultry plant were paid to Mountain Valley Poultry, Inc. Price did not dispute that he was never an officer, director, or shareholder of Mountain Valley Poultry, Inc; he did not explain by what authority Vattes could negotiate to sell assets of the corporation, Mountain Valley Poultry, Inc.

When asked whether the partnership had a name, Price responded "Price's Best Foods," which was a corporation that Price had previously formed. Price did not claim that Vattes had any shares of stock in that corporation. Price contended that he simply ran his own corporation with the intent to further the "partnership" business, but just as Price was not involved in Mountain Valley Poultry, Inc.'s day-to-day operations, Vattes was not involved in the day-to-day operation of Price's Best Foods. Furthermore, Price never filed a partnership tax return for the new "partnership" with Vattes although he did know what a partnership return was because he was involved in other partnerships which did file tax returns.

Price claimed, as to the participation in the sharing of profits, the agreement was to share the profits from the sale of a plant wherever it was located. Apparently, there was no limit in this partnership agreement as to a time frame when the assets might be sold and whether it included future purchases of land, machinery, etc., in the agreement to share the profits from the sale. Missouri courts have de-

fined "profit" as the benefit of or the advantage remaining after all costs, charges, and expenses have been deducted from income. *Binkley v. Palmer,* 10 S.W.3d 166, 172 (Mo.App. E.D.1999). Gross revenues are not profits and an agreement to pay a percentage of gross revenues is not the sharing of profits. *Id.* Further, the courts have specifically held that receiving a share of gross revenues as payment for services rendered does not prove the existence of a partnership. *Id.* Although Price claimed in his petition that Vattes had previously paid him $63,012.60 in monthly payments, Price failed to develop that allegation in his response to the summary judgment motion. Thus, Price did not supply any evidence of the corporation profits ever being paid to him.

Furthermore, Price admitted that there was no discussion on the division of losses had there been a loss in their partnership business. When asked whether he was agreeable to paying 49% of the loss, Price testified, "I'm sure I would have been." When pressed whether he had an agreement to assume 49% of the loss, he said there was no agreement on the percentage of loss, that there was never a discussion about "loss or whatever."

In essence, the sum of Price's allegations are that, in one phone call, the majority shareholder of a corporation entered into an agreement to share with Price a 49% ownership in the assets (present and future) of the corporation already in existence, at some point in the future when it sold, without any commitment from Price as to the payment of any losses should the corporation lose money. Price may have intended to form some sort of partnership, but the relationship between Price and Vattes falls far short of a legal partnership. Price failed to provide in his response to the summary judgment motion sufficient issues of material fact that he

and Vattes entered into a specific agreement to carry on as co-owners in a business for profit. *See H2O'C Ltd. v. Brazos,* 114 S.W.3d 397, 403–404 (Mo.App. W.D. 2003) (finding that the failure to agree to share losses defeated the allegation of a partnership). Price failed to establish any issue concerning co-ownership of business assets, mutual rights of control of the business, an agreement in fact, and the right to share in profits and duty to share in losses; he did not even claim that he participated in the management of the poultry plant. Given Price's definition of a partnership as being "two people involved in the same operation, company, whatever," he did not provide facts to support his claim of a legal partnership as a matter of law. The trial court did not err in granting summary judgment to Vattes.

The judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.